**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| James N. Shaub, | : | Case No. 1:08CV2522 |
| | : | |
| Petitioner | : | Judge Christopher A. Boyko |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Timothy Brunsman, Warden, | : | |
| | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| Respondent | : | |

In this action in habeas corpus, 28 U.S.C. §2254, petitioner challenges the constitutionality of his June 2, 2006 re-sentencing to an aggregate term of imprisonment of 11 years, consequent to his conviction pursuant to a plea of guilty to one count of rape, upon which he was sentenced to eight years incarceration, plus three years on a firearm specification, to run consecutively.

Petitioner's sentencing history was summarized by the state appellate court as follows:

> On March 3, 2003, a complaint was filed in the Painesville Municipal Court charging appellant with one count of rape, in violation of R.C. 2907.02(A), and one count of kidnaping, in violation of R.C. 2905.01(A)(4). Appellant waived his right to a preliminary hearing and consented to be bound over to the Lake County Court of Common Pleas.
>
> By information, in the court of common pleas, appellant was charged with one count of rape, in violation of R.C. 2907.02(A), with a firearm specification under R.C. 2941.145. Subsequently, appellant pled guilty to the charges, which the court accepted and entered judgment accordingly.
>
> Appellant was first sentenced on May 5, 2003. The court

1

determined that appellant was a sexual predator and entered a consecutive sentence of eight years for the offense of rape and three years for the firearm specification.

During the sentencing and classification hearing, the court reviewed the substantive allegations, find that "[o]n March 3, 2003, appellant approached the victim, a prostitute, to elicit sex. The victim informed appellant that she would accommodate him with oral or vaginal sex, but would not engage in anal sex. Ultimately, appellant and the victim drove to appellant's home in Lake County, Ohio. Once inside the home, appellant pointed a gun at the victim's head and ordered her into his bedroom. Appellant then instructed the victim to disrobe. After she had undressed, appellant forced the victim to lie on her stomach and put her hands behind her back, at which time appellant handcuffed her hands. Appellant proceeded to rape the victim by means of anal and oral intercourse. During the course of the rape, appellant placed his gun on a nightstand next to the bed."

Appellant then appealed this sentence to our court on June 12, 2003, raising three assignments of error. Appellant appealed the sexual predator classification as against the manifest weight of the evidence, that his sentence was not supported by the record, and that the court erred when it sentenced him to a "maximum sentence" based on factors not found by the jury or admitted by him, in violation of his state and federal constitutional rights to trial by jury. We affirmed, finding appellant's appeal to be without merit.

Appellant then appealed to the Supreme Court of Ohio, which reversed and remanded for re-sentencing pursuant to *State v. Foster* (2006), 109 Ohio St.3d 1, on May 22, 2006. The trial court resentenced appellant on June 2, 2006, to consecutive sentences of eight years for the offense of rape, and the mandatory sentence of three years for the firearm specification.

Petitioner appealed his June 2, 2006 re-sentencing to the Ohio Eleventh District Court of

Appeals alleging five assignments of error:

1. The trial court erred when it sentenced the Defendant-Appellant to a more-than-the-minimum prison term in violation of the due process and ex post facto clauses of the Ohio and United States Constitutions.

2

2.   The trial court erred when it sentenced the Defendant-Appellant to a more-than-the-minimum prison term in violation of the Defendant-Appellant's right to due process.

3.   The trial court erred when it sentenced the Defendant-Appellant to a more-than-the-minimum prison term based on the Ohio Supreme Court's severance of the offending provisions under *Foster*, which was an act in violation of the principle of separation of powers.

4.   The trial court erred when it sentenced the Defendant-Appellant to a more-than-the-minimum prison term contrary to the rule of lenity.

5.   The trial court erred when it sentenced the Defendant-Appellant to a more-than-the-minimum prison term contrary to the intent of the Ohio Legislators.

On June 11, 2007 the appellate court affirmed the sentence imposed by the trial court.

Petitioner appealed the appellate court ruling to the Ohio Supreme Court alleging five propositions of law which paralleled those raised to the lower appeals court.  On October 24, 2007 the state supreme court denied petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

On October 23, 2008 the petitioner filed the instant petition, in which he raises the following five claims for relief:

A.   **GROUND ONE:**   A trial court violates an individuals [sic] right under Due Process and Ex Post Facto Clauses, Ohio and U.S. Constitution when it sentence [sic] petitioner to new court ruling.

B.   **GROUND TWO:** Violated Due Process when there was no constructive notice, or fact findings or admission to elements during sentencing.

C.   **GROUND THREE:** Violated separating [sic] of powers provided in Ohio and U.S. const. when sentencing petitioner.

3

   **D.**  **GROUND FOUR:** Violated Rule of Lenity.

   **E.**  **GROUND FIVE:** Prison term is contrary to legislations [sic] intent.

The provisions of the Antiterrorism and Effective Death Penalty Act, "AEDPA," Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 26, 1996) are controlling herein as the instant petition was filed after the Act's effective date.  Lindh v. Murphy, 521 U.S. 320 (1997).[1]

The role of a federal district court in habeas corpus is set forth in Title 28 U.S.C. § 2254 (d) which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has held that the clauses "contrary to" and "unreasonable application of" as found in §2254(d)(1) have independent meanings;  Williams v. Taylor, 529 U.S. 420 (2000), with the state court adjudication being "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court];" and with

---

[1]There are no issues of untimeliness or procedural default in this case.

the state court adjudication involving an "unreasonable application of clearly established Federal law, as determined by the Supreme Court" "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "if the state court either unreasonably extends a legal principal from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should apply." 120 S.Ct. at 1519-1520.   In deciphering the "unreasonable application" clause this Court must inquire as to whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.  Even if the state court decision resulted in an incorrect application of federal law, if that decision is reasonable it will stand.  Id.  See, Machacek v. Hofbauer, 213 F.3d 947, 953 (6th Cir. 2000).

Petitioner's first two claims for relief will be considered together, in light of the fact that they both challenge the sentence imposed by the trial court which was more than the minimum prison term without reliance upon factual findings made by a jury to enhance his sentence under the law, which he argues is in violation of the rule of law set out by the United States Supreme Court in Blakely v. Washington, 542 U.S. 296 (2004).  Petitioner further argues that the remedy set forth in State v. Foster, 109 Ohio St.3d 1, 845 N.E.3d 470 (2006), violates the Ex Post Facto and Due Process Clauses of the United States Constitution, in light of the fact that the effect of that decision was to increase the statutory presumptive sentences, despite the fact that the pre-Foster rule which was in effect at the time of his plea and initial sentencing included a presumption that he would be sentenced to a minimum term.

In Blakely, the Court held that violations of the Sixth Amendment to the United States

5

Constitution could be avoided if "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 301 (quoting Apprendi v. New Jersey, 530 U.S. 466, 490 (2000)). Although the Blakely case limited the authority of the trial judge to impose sentences in excess of the maximum provided by law, the authority of a sentencing judge to impose a sentence within the prescribed statutory range for a particular offense was not limited in the same way.

In January of 2005 the United States Supreme Court held, in United States v. Booker, 543 U.S. 220, 245, 259 (2005), that the mandatory provisions of the United States Sentencing Guidelines were unconstitutional under the Blakely decision, but they could be used in an advisory manner.

The Ohio Supreme Court applied the Apprendi, Blakely, and Booker decisions to the Ohio sentencing guidelines and held that parts of Ohio's felony sentencing scheme were unconstitutional, including Ohio Revised Code §§ 2929.14(B), 2929.19(B)(2), and 2929.41, which provide for judicial findings of fact in order to rebut presumptions in sentencing terms; §2929.14(C), providing for the imposition of maximum sentences; §2929.14(D)(2)(b), findings for repeat violent offender; §2929.14(D)(3)(b), major drug offenders; §2929.14(E)(4), providing for the imposition of consecutive sentences;[2] and §2953.08 (G), statutory findings for consecutive sentences in the appellate record. State v. Foster, 109 Ohio St.3d 1, 62-67, 83, 845 N.E.2d 470 (2006). The constitutional violation was premised upon the fact that those provisions require

---

[2]On January 14, 2009 the United States Supreme Court decided Oregon v. Ice, 555 U.S. ___, 2009 U.S. LEXIS 582 (2009), which abrogated this portion of the Foster decision and held that judicial factfinding to determine whether consecutive sentences should be imposed does not violate Apprendi/Blakely. In so doing, the Court expanded the scope of judicial factfinding discretion in sentencing.

judicial findings of fact beyond those either rendered by the jury or admitted to by the defendant. Ibid.  Those offending portions of the sentencing code were severed, *but trial courts retained full discretion to impose sentences within the statutory range while no longer being required to make findings of fact or to articulate reasons for imposing maximum or consecutive sentences*.  Id. at 100.  Not severed from the sentencing code was §2929.12 which provides for a determination of the seriousness of the offense and recidivism factors, including a prior criminal history.  As the Court did in Booker, the Ohio Supreme Court determined that its holding in Foster was to be applied to any case pending on direct appeal, and that where sentences were found to have been constitutionally invalid, remanding and re-sentencing were in order.

The Ex Post Facto Clause provides that "no State shall...pass any...ex post facto Law." U.S. Constitution, Art. I., §10, cl.1.  Ex Post Facto Clause challenges to the Foster decision have been repeatedly denied by Ohio state courts.  State v. Swann, 171 Ohio App.3d 304, 314, 870 N.E.2d 754, 762 (2007), reversed on other grounds, 119 Ohio St.3d 552 (2008); State v. Sharp, unreported, Case No. 89295, 2007 Ohio App. LEXIS 5549 (Ct.App.Cuy.Cnty. 2007); State v. McGhee, unreported, Case No. 17-06-05, 2006 Ohio App. LEXIS 5102 (Ct.App. Shelby Cnty. 2006).  The McGhee court premised its decision that there had been no violation of the Ex Post Facto Clause in part on the fact that the defendant "knew the potential statutory sentence for committing a first degree felony, ...had notice that Ohio's sentencing statutes were subject to judicial scrutiny, and ...was unlikely to amend his criminal behavior in light of a sentencing change." McGhee, supra at ¶20.  The Sharp court determined that "the sentencing range was the same at the time [the defendant] committed the offenses as when he was sentenced," and the Foster case "did not judicially increase the range of his sentence."  Sharp, supra at ¶10.

7

Ex Post Facto Clause challenges to the <u>Booker</u>[3] decision have been repeatedly denied by the federal courts.  <u>United States v. Barton</u>, 455 F.3d 649, 657 (6th Cir. 2006), <u>cert. denied</u>, 127 S.Ct. 748 (2006); <u>United States v. Davenport</u>, 455 F.3d 366 (4th Cir. 2006); <u>United States v. Austin</u>, 432 F.3d 598, 599-600 (5th Cir. 2005); <u>United States v. Vaughn</u>, 430 F.3d 518 (2nd Cir. 2005), <u>cert. denied</u>, 547 U.S. 1060 (2006); <u>United States v. Perez-Ruiz</u>, 421 F.3d 11 (1st Cir. 2005), <u>cert. denied</u>, 546 U.S.  1120 (2006); <u>United States v. Dupas</u>, 419 F.3d 916, (9th Cir. 2005), <u>cert. denied</u>, 547 U.S. 1011 (2006); <u>United States v. Jamison</u>, 416 F.3d 538 (7th Cir. 2005) ("Jamison also had fair warning that distributing cocaine base was punishable by a prison term of up to twenty years, as spelled out in the United States Code.  Jamison had sufficient warning of the possible consequences of his actions, and his sentence does not run afoul of any of the core concepts discussed in <u>Rogers</u>.")

Notably, Ex Post Facto challenges similar to that raised by the petitioner have been rejected by judges in this district.  <u>Watkins v. Williams</u>, Case No. 3:07CV1296 (N.D.Ohio June 17, 2008) (J. Adams) (The <u>Foster</u> decision did not violate due process as it did not alter the fact that the defendant was well aware of the maximum penalty he faced at the time of his crime.);  <u>Lyles v. Jeffreys</u>, Case No. 3:07CV1315 (N.D.Ohio April 24, 2008) (J. Oliver) (The trial court's re-sentencing did not violate petitioner's Due Process right not to be re-sentenced pursuant to a law which violates the Ex Post Facto Clause, as petitioner "had fair notice of the acts that were prohibited and the degree of punishment which the Ohio legislature wished to impose on those who committed those acts.");  <u>McGhee v. Konteh</u>, Case No. 1:07CV1408 (N.D.Ohio Feb. 1, 2008) (J. Nugent) (Affirming Magistrate Judge Limbert's conclusion that "Since the *Foster* decision does

---

[3]Significant in light of the fact that the <u>Foster</u> and <u>Booker</u> decisions employed similar rationales to craft similar remedies.

not change the elements necessary to convict Petitioner or the potential maximum sentence that Petitioner faced for a first degree felony, *Foster* does not raise an ex post facto-type due process violation.  Moreover, the trial judge's application of *Foster* to Petitioner's case in particular did not violate *Apprendi* because he did not sentence Petitioner beyond the statutory maximum.")

The appellate court rejected petitioner's  challenges to his sentence, holding in pertinent part:

> We note that the issues contained in appellant's five assignments of error have recently been raised and rejected by this court in numerous prior decisions of this court.  See *State v. Green*, 11th Dist. Nos. 2005-A-0069 and 2005-A-0070, 2006-Ohio-6695; *State v. Elswick*, 11th Dist. No. 2006-L-075, 2006-Ohio-7011; *State v. Asbury*, 11th Dist. No. 2006-L-097, 2007-Ohio-1073; *State v. Anderson*, 11th Dist. No. 2006-L-142, 2007-Ohio-1062; *State v. Spicuzza*, 11th Dist. No. 2006-L-141, 2007-Ohio-783.
>
> These same arguments have also been consistently rejected by other Ohio appellate districts and federal courts.  See *State v. Gibson*, 10th Dist. No. 06AP-509, 2006-Ohio-6899; *State v. Moore*, 3d Dist. No. 1-06-51, 2006-Ohio-6860; *United States v. Portillo-Quezada* (C.A.10 2006), 469 F.3d 1345, 1354-1356, and the cases cited therein.
>
> Thus, based on our prior decisions, appellant's assignments of error are without merit.

In the <u>Elswick</u> decision the state appellate court held that the application of the <u>Foster</u> decision to a case in which the crimes were committed before the decision was issued did not violate either the Due Process or the Ex Post Facto Clauses, in light of the fact that the potential sentences faced by the defendant were the same before and after the <u>Foster</u> decision, holding in pertinent part:

> In his first assignment of error, appellant argues that the trial court erred by sentencing him to more than the minimum prison terms in violation of the due process and ex post facto clauses of the Ohio

and United States Constitutions.  He alleges that the sentences imposed were not available to the trial court at the time the offenses were committed.

In his second assignment of error, appellant contends that the trial court erred by sentencing him to more than the minimum prison terms in violation of his right to due process.  He maintains that he had neither actual nor construction notice that the sentences imposed were possible punishments for the offenses.

* * * * *

With respect to his first and second assignments of error, appellant raises an issue of first impression for our court.  However, other appellate districts have considered the question, and concluded that *State v. Foster, 109 Ohio St.3d 1, 2006 Ohio 856, 83, 845 N.E.2d 470,* does not violate *due process* and the *ex post facto clause* because defendants face the same potential sentences as they did before *Foster* was decided. See *State v. Smith, 2d Dist. No. 21004, 2006 Ohio 4405;  State v. Newman, 9th Dist. No. 23038, 2006 Ohio 4082;* and *State v. McGhee, 3d Dist. No. 17-06-05, 2006 Ohio 5162.*

Article I, Section 10 of the United States Constitution provides that no state shall pass ex post facto laws.  The ex post facto clause extends to four types of laws:

> "'1st.  Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action.  2d. Every law that aggravates a crime, or makes it greater than it was, when committed.  3d.  *Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.*  4th.  Every law that alters the legal rules of evidence, and receives less, or different, testimony than the law required at the time of commission of the offense, in order to convict the offender.'" (Emphasis added.) *Rogers v. Tennessee (2001), 532 U.S. 451, 456, 121 S.Ct. 1693, 149 L.Ed.2d 697,* quoting *Calder v. Bull (1798), 3 U.S. 386, 390, 1 L.Ed. 648, 3 Dall. 386* (seriatum opinion of Chase, J.).

In addition "'*Section 28, Article II of the Ohio Constitution*

10

prohibits the General Assembly from passing retroactive laws and protects vested rights from new legislative encroachments.'" *Smith v. Smith, 109 Ohio St.3d 285, 2006 Ohio 2419, at P6, 847 N.E.2d 414,* quoting *Vogel v. Wells (1991), 57 Ohio St.3d 91, 99, 566 N.E.2d 154.* "The *retroactivity clause* nullifies those new laws that 'reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time (the statute becomes effective).'" *Bielat v. Bielat (2000), 87 Ohio St.3d 350, 352-353, 2000 Ohio 451, 721 N.E.2d 28,* quoting *Miller v. Hixson (1901), 64 Ohio St.39, 51, 59 N.E.749.*

In the instant matter, we must consider both the federal and state constitutional ramifications of *Foster*.[2]

_____

[2] In *Foster*, the Supreme Court of Ohio held that the trial court is no longer required to make findings or give its reasons for imposing the maximum, consecutive or more than the minimum sentences. *Foster*, *supra*, at paragraph seven of the syllabus.

_____

With respect to the federal constitutional considerations, due process guarantees notice and a hearing. The right to a sentencing hearing has not been implicated by *Foster*. Thus, we are only concerned with the issue of warning as to potential sentences. Federal circuit courts have determined that *United States v. Booker (2005), 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed. 621,* does not violate the ex post facto clause because there has been no due process violation.

Most circuit courts have held that defendants were on notice with respect to statutory maximums, regardless of whether the federal sentencing guidelines were mandatory. *McGhee, supra, at P15,* citing *United States v. Duncan (11th Cir. 2005), 400 F.3d 1297.* See, also, *United States v. Pennavaria (3d Cir. 2006), 445 F.3d 720; United States v. Davenport (4th Cir. 2006), 445 F.3d 366; United States v. Alston-Graves (D.C.Cir. 2006), 369 U.S.App. D.C. 219, 435 F.3d 518; United States v. Dupas (9th Cir. 2005), 419 F.3d 916;* and *United States v. Jamison (7th Cir. 2005), 416 F.3d 538.*

Similarly, in Ohio, prior to *Foster*, individuals who decided to commit crimes were aware of what the potential sentences could be for the offenses committed. *R.C. 2929.14(A).* Here, appellant pleaded guilty to count one, failure to comply with order or signal of police officer, a felony of the third degree, in violation of *R.C.*

11

*2921.331(B)*, and count two, receiving stolen property, a felony of the fourth degree, in violation of *R.C. 2913.51(A)*. The indictment alleged that appellant committed the foregoing offenses on December 13, 2005. Thus, appellant's offenses were committed before *Foster*, but after *Apprendi v. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, Blakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403* and *Booker, supra*.

There was no legislative alteration of Ohio's sentencing code post *Foster*. The range of sentences available for third and fourth degree felonies remained unchanged. *R.C. 2929.14(A)(3) and (4)* provided fair warning to appellant that he could receive anywhere from one to five years for his third degree felony offense, and six to eighteen months for his fourth degree felony offense. Appellant understood and signed his plea agreement, specifying the code provisions in effect at that time, which, again, have not changed or been enlarged in any manner after *Foster*. He was sentenced on April 3, 2006, over a month after *Foster* was decided.

Appellant knew the potential statutory sentence, had notice that Ohio's sentencing statutes were subject to judicial scrutiny, and was unlikely to amend his criminal behavior in light of a sentencing change. Therefore, this court cannot hold that *Foster* violated federal notions of due process as established in *Bouie v. Columbia (1964), 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894,* and *Rogers, supra.*

Regarding the state constitutional considerations, the Third District in *McGhee, supra, at P21-22,* stated:

> "[i]n construing Ohio's constitution, we must adapt the test for retroactive legislation to apply to retroactive judicial decisions. In determining whether a law violates *Section 28, Article II of the Ohio Constitution*, we must first evaluate whether the court intended its holding to apply retroactively. See [*Smith supra at P6*]***. In *Foster*, the court applied its holding retroactively, but only so as to affect cases on direct appeal and those cases pending in the trial courts. *Foster, at P104.****

> "Even though a law may apply retroactively, it is not necessarily unconstitutional. A substantive

12

> retroactive law will be held unconstitutional, while
> a remedial retroactive law is not. *Smith, at P6\*\*\**.
> A statute is substantive if it "'impairs vested rights,
> affects an accrued substantive right, or imposes new
> or additional burdens, duties, obligations, or
> liabilities as to a past transaction.'" *Id. at P6\*\*\**."
>
> We agree with the Third District that the court's holding in *Foster*
> does not create a substantively retroactive law. *McGhee, supra, at
> P23*. The holding in *Foster* applies retroactively in a limited
> number of cases, but it does not affect a vested or an accrued
> substantive right. Id. "[A] presumed sentence *can* be 'taken away'
> without the defendant's consent." *Id. at P24*. Thus, no vested right
> has been affected by *Foster*. Id. In addition, no accrued substantial
> right has been affected. *Id. at P25*. "[D]efendants are not entitled
> to enforce or protect specific sentences prior to sentencing." Id. A
> range of determinative sentences available for each degree of felony
> offense is established in *R.C. 2929.14(A)*. "Even under S.B.2,
> defendants could not expect a specific sentence because judges
> could make findings to sentence anywhere within the range
> provided by *R.C. 2929.14(A)*." Id.
>
> *Foster* does not violate *Section 28, Article II of the Ohio
> Constitution*, or Article I, Section 10 of the United States
> Constitution .
>
> Appellant's first and second assignments of error are without merit.

State v. Elswick, supra at ¶¶10-31.

Applying similar rationale, the court in State v. Green held that the application of the Foster

decision to a case in which the crimes were committed before the decision was issued did not

violate the Ex Post Facto Clause or the rule of lenity, in light of the fact that the Ohio Supreme

Court held that Foster was to be applied to cases pending on appeal, as did the United States

Supreme Court in Booker, holding in pertinent part:

> Green argues that the retroactive application of *Foster* to his re-
> sentencing hearing violates the Ex Post Facto Clause, Article I, Section
> 10, of the United States Constitution. The clause prohibits the
> retroactive application of "every law that changes the punishment [for

13

a crime], and inflicts a greater punishment, than the law annexed to the crime, when committed." *Rogers v. Tennessee* (2001), 532 U.S. 451, 456, 121 S. Ct. 1693, 149 L. Ed. 2d 697, citing 16 *Calder v. Bull* (1798), 3 U.S. 386, 389, 1 L. Ed. 648, 3 Dall. 386. Although"[t]he Ex Post Facto Clause, by its own terms, does not apply to the courts,"Id. at 460, "if a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' [the construction] must not be given retroactive effect." Id. at 457, citing *Bouie v. Columbia* (1964), 378 U.S. 347, 354, 84 S. Ct. 1697, 12 L.Ed. 2d 894.

Green maintains the retroactive application of *Foster* violates the Ex Post Facto Clause because it deprives offenders of "the presumption of minimum, less than maximum and concurrent terms of imprisonment." Green relies on the United States Supreme Court's decision in *Miller v. Florida* (1987), 482 U.S. 423, 107 S. Ct. 2446, 96 L. Ed. 2d 351, which applied the Ex Post Facto Clause to bar the retroactive application of legislative amendments to Florida's felony sentencing guidelines. Id. at 433 (finding that the defendant was entitled to be sentenced within the presumptive range in effect at the time of conviction and that the revised guidelines, although not technically increasing the defendant's potential sentence, "foreclosed his ability to challenge the imposition of a sentence longer than his presumptive sentence under the old law").

The Ex Post Facto Clause does not bar the remand of Green's case for re-sentencing. The Ohio Supreme Court, in *Foster*, expressly held that the"normal course" to be followed when a statute is deemed void is "is to vacate that sentence and remand to the trial court for a new sentencing hearing."2006 Ohio 856, at P103. Moreover, the Ohio Supreme Court mandated that this remedy applied to "those [cases] pending on direct review." Id. at P104. We are bound to following the holding of the Ohio Supreme Court, just as federal courts have been bound to follow the instructions of the United States Supreme Court to apply the holding in *United States v. Booker* (2005),543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621, retroactively. See *United States v. Pennavaria* (C.A.3, 2006), 445 F.3d 720, 723 ("the Supreme Court in *Booker* clearly instructed that * * * its holdings should be applied to all cases on direct review"); *United States v. Anderson* , 187 Fed. Appx. 517, at 520-521(citations omitted).

Additionally, we find that *Miller* is distinguishable from the present situation involving *Foster*. The revisions to the sentencing guidelines at issue in *Miller* were put into effect by the action of the Florida Legislature. As noted above, the Ex Post Facto Clause typically applies to laws, not the judicial construction of laws. In order for the clause

14

to apply to a judicial construction, that construction must be "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." *Rogers*, 532 U.S. at 457 (citation omitted). The Ohio Supreme Court's decision in *Foster* was neither unexpected nor indefensible by reference to prior law concerning the application of the Sixth Amendment to sentencing enhancements. Senate Bill 2 only became the law of Ohio in 1996 and the Ohio Supreme Court had not previously addressed the issue of its constitutionality relative to the Sixth Amendment. The United States Supreme Court began addressing this issue in *Almendarez-Torres v. United States*(1998), 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350, and Ohio law has always mandated that sentencing enhancements, such as the gun specification, must be proven beyond a reasonable doubt before a jury. Cf. R.C. 2929.14(D)(1)(a). Therefore, under the more lenient standard prescribed for the judicial construction of statutes, the retroactive application of *Foster* does not violate the Ex Post Facto Clause. See, also *State v. Smith*, 2nd Dist. No. 21004, 2006 Ohio 4405, P32-34 (holding that the Ex Post Facto Clause does not bar the retroactive application of *Foster* on different grounds).

Finally, we note that Green urges the application of the Ex Post Facto Clause for the purpose of being sentenced under a law declared unconstitutional. In effect, Green seeks to have this court remand his case with instructions for the trial court to violate the Constitution in re-sentencing him. Such a result contradicts the general rule that, when a supreme court strikes down a law as unconstitutional, "the effect is not that the former was bad law, but that it never was the law." *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 210,129 N.E.2d 467.

State v. Green, supra at ¶¶ 19-23.

As did the Elswick court, the appellate court in State v. Spicuzza held that the application of

the Foster decision to a case in which the crimes were committed before the decision was issued

did not violate either the Due Process or the Ex Post Facto Clauses, in light of the fact that the

potential sentences faced by the defendant were the same before and after the Foster decision,

holding in pertinent part:

In his first assignment of error, Spicuzza argues that the trial court's application of *Foster* to his sentencing violated the Ex Post Facto Clause, Article I, Section 10, of the United States Constitution, and Section 28,Article II of the Ohio Constitution. In his second

15

assignment of error, Spicuzza argues that the trial court erred by sentencing him to more than the minimum prison term in violation of his right to due process since, he had neither actual nor constructive notice that the sentences ultimately imposed by the trial court were possible punishments for his crimes.

"[L]imitations on ex post facto judicial decisionmaking are inherent in the notion of due process." *Rogers v. Tennessee* (2001), 532 U.S. 451, 456, 121 S. Ct.1693, 149 L. Ed. 2d 697. Accordingly, we will consider Spicuzza's first and second assignments in a consolidated fashion.

Article I, Section 10 of the United States Constitution provides that no state shall pass ex post facto laws. The clause prohibits, inter alia, "Every law that changes the punishment, and inflicts a greater punishment [for a crime],than the law annexed to the crime, when committed." Id., citing *Calder v. Bull*(1798), 3 U.S. 386, 389, 1 L. Ed. 648, 3 Dall. 386.

"Section 28, Article II of the Ohio Constitution prohibits the General Assembly from passing retroactive laws and protects vested rights from new legislative encroachments." (emphasis added). *Smith v. Smith*, 109 Ohio St.3d285, 2006 Ohio 2419, at P6, 847 N.E.2d 414, quoting *Vogel v. Wells* (1991), 5718Ohio St.3d 91, 99, 566 N.E.2d 154. "The retroactivity clause nullifies those new laws that 'reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time [the statute becomes effective].'" *Bielat v. Bielat*, 87 Ohio St.3d 350, 352-353, 2000 Ohio 451, 721N.E.2d 28, quoting *Miller v. Hixson* (1901), 64 Ohio St. 39, 51, 59 N.E. 749.

"The Ex Post Facto Clause, by its own terms, does not apply to the courts."*Rogers*, 532 U.S. at 460. However, "if a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' [the construction] must not be given retroactive effect." Id. at 457, citing *Bouie v. Columbia* (1964), 378 U.S.347, 354, 84 S. Ct. 1697, 12 L. Ed. 2d 894. Notions of due process guarantee notice and a hearing. *State v. McGhee*, 3rd Dist. No. 17-06-05, 2006 Ohio5162, at P14. "Since the right to a sentencing hearing has not been implicated by *Foster*, we are concerned only with the issue of warning as to potential sentences." Id.

Spicuzza argues that since he had committed the offenses for which he was convicted prior to the *Foster* decision, and had not served a prior prison term, *Foster*'s remedy of severing the statutory presumption of a minimum sentence unless judicial findings are made, unconstitutionally deprived him of the presumptive minimum

16

sentence of two years, since he did not have actual or constructive notice of the *Foster* remedy at the time the crimes were committed. We disagree.

As an initial matter, we note that the Ohio Supreme Court's severance remedy did not implicate a vested right. Id. at P24. It is well-settled that "a presumed sentence can be 'taken away' without the defendant's consent." Id.(citations omitted)(emphasis sic).

This court recently addressed these issues in *State v. Elswick*, 11th Dist. No.2006-L-075, 2006 Ohio 7011, and held that the Supreme Court's severance remedy in Foster did not violate "Section 28, Article II of the Ohio Constitution or Article I, Section 10 of the United States Constitution." Id. atP30. *Elswick* also held that sentencing pursuant to the Ohio Supreme Court's remedial ruling in *Foster* did not violate "federal notions of due process." Id. at P25. In so doing, we reasoned that "in Ohio, prior to *Foster*, individuals who decided to commit crimes were aware of what the potential sentences could be for the offenses committed." Id. at P23, citing R.C. 2929.14(A)."There was no legislative alteration of Ohio's sentencing code post *Foster*"and "the range of sentences available for *** felonies remained unchanged."Id. at P24. As applied to the instant matter, the statute governing sentencing for second degree felonies provided for a prison term ranging from two to eight years both before and after *Foster*. See R.C. 2929.14(A)(2).

In the case sub judice, Spicuzza's indictment alleged that he had committed the offenses to which he pled guilty on February 14, 2005, and February 27,2005, which was before Foster was decided, but after *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435, *Blakely v. Washington*(2004), 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403, and *United States v. Booker* (2005), 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 were decided by the United States Supreme Court.

"The Supreme Court in *Foster* *** employed the same remedy used by the United States Supreme Court in *Booker*, in order to bring Ohio's sentencing scheme in line with constitutional mandates." *Elswick*, 2006 Ohio 7011, at P38. Accordingly, the judicial construction of Ohio's sentencing statutes in *Foster* could hardly be considered "unexpected nor indefensible by reference to prior law concerning the application of the Sixth Amendment to sentencing enhancements." *State v. Green*, 11th Dist. Nos. 2005-A-0069 and2005-A-0070, 2006 Ohio 6695, at P22.

Spicuzza "knew the potential statutory sentence, had notice that

17

Ohio's sentencing statutes were subject to judicial scrutiny, and was unlikely to amend his criminal behavior in light of a sentencing change." *Elswick*, 2006 Ohio 7011, at P25.

There is yet another reason for rejecting Spicuzza's argument. The remedy he now seeks "urges the application of the Ex Post Facto Clause for the purpose of being sentenced under a law declared unconstitutional" by the Ohio Supreme Court. *Green*, 2006 Ohio 6695, at P23. In practical effect, Spicuzza would "have this court remand this case with instructions for the trial court to violate the Constitution in re-sentencing him. Such a result contradicts the general rule that, when a supreme court strikes down a law as unconstitutional, 'the effect is not that the former was bad law, but that it never was the law.'" Id. citing *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St.209, 210, 129 N.E.2d 467. Thus, absent a subsequent ruling from the Ohio Supreme Court addressing these issues directly, we are unable to grant the relief sought. See *State v. Gibson*, 10th Dist. No. 06AP-509, 2006 Ohio 6899,at P15, citing *State v. Hildreth*, 9th Dist. No. 06CA8879, 2006 Ohio 5058, atP10 ("[I]nferior courts are bound by Supreme Court of Ohio directives.");*State v. Durbin*, 2nd Dist. No. 2005-CA-134, 2006 Ohio 5125, at P42 ("As an Ohio court inferior to the Ohio Supreme Court, we are required to follow its mandates; we lack the jurisdictional power to declare a mandate of the Ohio Supreme Court to be unconstitutional.").

For these reasons, Spicuzza's first and second assignments of error are without merit.

Spicuzza, supra at ¶¶13-25.

The state appellate court's reliance on the foregoing legal opinions in concluding that there was no constitutional violation in petitioner's re-sentencing can be read as rejecting the notion of a violation of the Ex Post Facto Clause due to the fact that petitioner had sufficient warning (both before and after Foster) of his potential sentence to satisfy the Ex Post Facto and Due Process Clauses in light of the fact that Foster did not change the potential maximum sentence that he faced if he committed the crime with which he was ultimately charged, nor did it change the elements necessary to convict him of that crime.  In addition, he was informed at his sentencing that his sentence would fall within the proscribed ranges for crimes upon which he entered his plea.

Petitioner knew that any thought of receiving a minimum sentence he may have entertained prior to his sentencing was always vulnerable to change by the sentencing court.

Similar to the appellant in the Elswick case, the petitioner was convicted of one count of rape, in violation of R.C. 2907.02(A), with a potential prison term of three to ten years incarceration, and of a firearm specification under R.C. 2941.145, which bore a mandatory three years incarceration to be served consecutive to any other sentence imposed. At the time he committed the offense, petitioner had fair notice that he faced a sentence greater than the minimum sentence to which he now claims to have been entitled, and at the time of his re-sentencing the same statutes applied. The laws had not changed in such a manner as to increase the punishment for those crimes, nor did they deprive him of a defense which had been available at the time he committed the crimes.

As a consequence of the foregoing, petitioner has failed to show that the state appellate court decision upholding his re-sentencing resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, nor that the decision was based upon an unreasonable determination of the facts in light of the evidence presented.

It follows that petitioner's first and second claims for relief are without merit.

In petitioner's third claim for relief he challenges the sentence imposed upon re-sentencing as having violated the doctrine of separation of powers as a consequence of the fact that he was not sentenced to the minimum term provided for under the statute. Similarly, in his fifth claim for relief petitioner argues that by sentencing him to more than the minimum term provided under the sentencing statute, the trial court did not act in accordance with the legislative intent of that statute.

19

To be entitled to relief in federal habeas corpus a petitioner must establish that there has been infringement of a right guaranteed under the United States Constitution.  <u>Clemmons v. Sowders</u>, 34 F.3d 352, 357 (6th Cir. 1994).   A violation of state law is not cognizable in federal habeas corpus unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution.  <u>See</u>, <u>Floyd v. Alexander</u>, 148 F.3d 615, 619 (6th Cir.), <u>cert. denied</u>, 525 U.S. 1025 (1998);  <u>Serra v.  Michigan Dep't of Corrections</u>, 4 F.3d 1348, 1354 (6th Cir.  1993), <u>cert. denied</u>, 510 U.S. 1201 (1994).  It is the obligation of this Court to accept as valid a state court's interpretation of the statutes and rules of practice of that state.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  <u>Accord</u>, <u>Duffel v. Dutton</u>, 785 F.2d 131, 133 (6th Cir. 1986).  "Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding."  <u>Seymour v.  Walker</u>, 224 F.3d 542 (6th Cir.  2000), <u>cert. denied</u>, 532 U.S. 989 (2001) (Internal quotations and citations omitted.).

The state appellate court's holding quoted <u>infra</u> was that these issues have previously been resolved by other state courts, including those cited previously.

For example, the <u>Foster</u> court held that severance of the offending portions of the sentencing statutes did not contravene the separation of powers:

> Severance also is the remedy that will best preserve the paramount goals of community safety and appropriate punishment and the major elements of our sentencing code.  Removing presumptive terms and preserving the remainder of the sentencing provisions of the Code will most effectively preserve the General Assembly's goal of truth in sentencing.  However tempting it may be for this court to reconfigure the sentencing code to cause the least impact on our criminal justice system, we must adhere to our traditional judicial role.  Our remedy does not rewrite the statutes but leaves courts with full discretion to impose a prison term within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant

without the mandated judicial findings that <u>Blakely</u> prohibits.

<u>Foster</u>, <u>supra</u> at 30.

Similarly, the <u>Elswick</u> court held that the principle of the separation of powers was not violated by the severance of the offending portions of the sentencing statutes:

> In his third assignment of error, appellant contends that the trial court erred by sentencing him to more than the minimum prison term based on the Supreme Court of Ohio's severance of the offending provisions under *Foster*, which was an act in violation of the principle of separation of powers. He stresses that the sentences imposed were the result of a judicially mandated change to Ohio's sentencing statutes.
>
> In *State v. Hochhausler* (1996), 76 Ohio St.3d 455, 463, 1996 Ohio 374, 668 N.E.2d 457, the Supreme Court of Ohio stated:
>
> "[t]he principle of separation of powers is embedded in the constitutional framework of our state government. The Ohio Constitution applies the principle in defining the nature and scope of powers designated to the three branches of government. *State v. Warner* (1990), 55 Ohio St.3d 31, 43-44, 564 N.E.2d 18 ***. See *State v. Harmon* (1877), 31 Ohio St. 250, 258. It is inherent in our theory of government "'that each of the three grand divisions of the government, must be protected from the encroachments of the others, so far that its integrity and independence may be preserved. (***)'" *South Euclid v. Jemison* (1986), 28 Ohio St.3d 157, 159, 28 Ohio B. 250, 503 N.E.2d 136 ***, quoting *Fairview v. Giffee* (1905), 73 Ohio St. 183, 187, 76 N.E.2d 865, 3 Ohio L. Rep. 494 ***." (Parallel citations omitted.)
>
> The court stated in *State v. Boczek*, 11th Dist. Nos. 2005-L-008 and 2005-L-009, 2006 Ohio 3767, at P37-38, quoting *State v. Heilman*, 11th Dist. Nos. 2004-T-0133 and 2004-T-0135, 2006 Ohio 1680, at P61:
>
> "'[c]ourts in Ohio, in determining whether or not a statute is unconstitutional, follow the well-settled axiom that a regularly enacted statute of the General Assembly is presumed to conform with the Ohio and United States Constitutions and is, therefore, entitled to the benefit of every presumption in favor of its constitutionality, unless it appears beyond a reasonable doubt that the legislation and the constitutional provisions are incompatible. *State ex rel. Dickman*

21

*v. Defenbacher* (1955), 164 Ohio St. 142, 128 N.E.2d 59 *** (***), at paragraph one of the syllabus.  Accordingly, the burden rests on the party challenging the statute to prove otherwise.  *State v. Thompkins*, 75 Ohio St.3d 558, 560, 1996 Ohio 264, 664 N.E.2d 926; *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 38, 616 N.E.2d 163 ***."  (Parallel citations omitted.)

R.C. 150 deals with severability of code section provisions and provides: "[i]f any provisions of a section of the Revised Code or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end the provisions are severable."

In the case sub judice, we do not agree with appellant that the Supreme Court of Ohio violated the separation of powers doctrine. We note that severance is a specific remedy that the judicial branch may use when interpreting a statute's constitutionality.  Pursuant to R.C. 1.50, if a statute is determined to be unconstitutional, the judicial branch is vested with the power to sever the provision found to be invalid.  The Supreme Court in *Foster* did not exceed its power by severing the statutes it found incompatible with the Ohio and United States Constitution.  Rather, it employed the same remedy used by the United States Supreme Court in *Booker*, supra, in order to bring Ohio's sentencing scheme in line with constitutional mandates.

Appellant's third assignment of error is without merit.

* * * * *

In his fifth assignment of error, appellant alleges that the trial court erred by sentencing him to more than the minimum prison terms contrary to the intent of the Ohio legislators.  He maintains that by severing the offending statutes in *Foster*, the Supreme Court failed to uphold the intent of the Ohio General Assembly when it enacted Senate Bill 2 ("S.B. 2").  Appellant stresses that exercising the findings a trial court was required to make when imposing more than the minimum, maximum, or consecutive terms, eliminates meaningful appellate review.  Also, he contends that the severance remedy in *Foster* was more severe than the remedy used in *Booker*.

* * * * *

With respect to the intent of the legislature in enacting S.B. 2 in 1996,

the Supreme Court stated: "[w]ith the enactment of S.B. 2, the General Assembly adopted a comprehensive sentencing structure that recognized the importance of 'truth in sentencing.'  The general purpose of S.B. 2 was to introduce certainty and proportionality to felony sentencing." *Foster* at P34.  The Supreme Court described the "overwhelming majority" of S.B. 2 reforms that survive its holding, and noted that trial courts must still "consider those portions of the sentencing code that are unaffected by [its] decision ***." Id. at P101, 105.  For example, trial courts must still consider R.C. 2929.11 and R.C. 2929.12 before imposing a sentence within the authorized statutory range. Id. at P105. See, also, *State v. Mathis*, 109 Ohio St.3d 54, 2006 Ohio 855, at P38, 846 N.E.2d 1.

"Excising the unconstitutional provisions does not detract from the overriding objectives of the General Assembly, including the goals of protecting the public and punishing the offender.  See R.C. 2929.11(A).  The excised portions remove only the presumptive and judicial findings that relate to 'upward departures,' that is the findings necessary to increase the potential prison penalty.  We add no language and the vast majority of S.B. 2, which is capable of being read and of standing alone, is left in place." *Foster* at P98.

R.C. 2929.11 and R.C. 2929.12, two key statutory provisions of Ohio's sentencing scheme, survive after *Foster*.  Even though trial courts are no longer required to make specific findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences on the record, R.C. 2929.11 and R.C. 2929.12 must still be considered when sentencing offenders.  Thus, although *Foster* and *Mathis* alter R.C. 2953.08, meaningful appellate review can still be achieved.  Trial courts generally discuss the seriousness of the offense and the likelihood of recidivism at the sentencing hearing.  The fact that defendants may not have as many options on appeal as they did before *Foster*, does not suggest that the Supreme Court wholly ignored the legislative intent of S.B. 2.

We do not agree with appellant that the severance remedy in *Foster* is a more severe and radical departure than that used in Booker.  Pursuant to *Booker*, again, the Supreme Court of Ohio determined that trial courts are still required to consider R.C. 2929.11 and R.C. 2929.12 before imposing a sentence within the authorized statutory range.  See *Foster* and *Mathis*.  Appellant's right to a meaningful appellate review has not been impeded by the decision in *Foster*.

Appellant's fifth assignment of error is without merit.

23

Elswick, supra at ¶ ¶32-39; 45-54.

In the Spicuzza case the appellant's arguments, which are nearly identical to those made in petitioner's third and fifth claims for relief, were rejected by the state court based on similar reasoning as that in Elswick:

> We next address Spicuzza's fifth and third assignments of error. These will be discussed in a consolidated fashion, since both argue, in effect, that the *Foster* decision impermissibly encroached upon legislative prerogatives.
>
> In his third assignment of error, Spicuzza argues that the trial court erred in applying the *Foster* remedy, since the Supreme Court of Ohio's act of severing the offending provisions in *Foster* was a violation of the principle of separation of powers.  In his fifth assignment of error, Spicuzza argues that the trial court's application of the *Foster* remedy was error, since the Supreme Court's decision failed to preserve the intent of the Ohio General Assembly when it enacted Senate Bill 2 ("S.B. 2") in 1996.  We disagree.
>
> "The principle of separation of powers is embedded in the constitutional framework of our state government."  *State v. Hochhausler*, 76 Ohio St.3d 455, 463, 1996 Ohio 374, 668 N.E.2d 457.  "The Ohio Constitution applies the principle in defining the nature and scope of powers designated to the three branches of the government."  Id.  (Citations omitted).  "It is inherent in our theory of government 'that each of the three *** divisions of government, must be protected from the encroachments of the others, so far that its integrity and independence may be preserved.'"  Id., quoting *South Euclid v. Jemison* (1986), 28 Ohio St.3d 157, 159, 28 Ohio B. 250, 503 N.E.2d 136, quoting *Fairview v. Giffee* (1905), 73 Ohio St.183, 187, 76 N.E. 865, 3 Ohio L. Rep. 494.
>
> "With respect to the intent of the legislature in enacting S.B. 2 in 1996, the Supreme Court stated: '[w]ith the enactment of S.B. 2, the General Assembly adopted a comprehensive sentencing structure that recognized the importance of 'truth in sentencing.'  The general purpose of S.B. 2 was to introduce certainty and proportionality to felony sentencing.'" *Elswick*, 2006 Ohio 7011, at 51, quoting *Foster*, 109 Ohio St.3d 1, 2006 Ohio 856, at P34, 845 N.E.2d 470.
>
> R.C. 150 recognizes the authority of the courts to review legislative enactments and sever, if necessary, provisions that are deemed in

24

conflict with the Ohio Constitution.  Id. at P38.  The statute states: "[i]f any provisions of a section of the Ohio Revised Code or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section *** *which can be given effect* without the invalid provision or application, and to this end the provisions are severable."  R.C. 150 (emphasis added).  Thus, pursuant to the statute, the legislature granted courts "a specific remedy *** the judicial branch may use when [determining] a statute's constitutionality."  *Elswick*, 2006 Ohio 7011, at P38.

In interpreting the constitutionality of Ohio's sentencing statutes, the Supreme Court of Ohio stated as follows with regard to presumptive minimum terms: "Ohio has a presumptive minimum prison term that must be overcome by *** judicial findings.  For someone who has never been to prison before (not necessarily a first-time offender), the court must find that the shortest prison term will 'demean the seriousness' of the crime or will inadequately protect the public; otherwise, the court must find that the offender has already been to prison to impose more than a minimum term."  *Foster*, 109 Ohio St.3d 1, 2006 Ohio 856, at P60, 845 N.E.2d 470.  After the severance remedy, the court stated that "[a]ll references to mandatory judicial fact-finding properly may be eliminated *** [and] [w]ithout the mandatory judicial fact-finding there is nothing to suggest a 'presumptive term.'" Id. at P96.  As the Fifth District Court of Appeals explained, "the Court in *Foster* *** found that the presumption *** only existed if the trial courts were free to overcome the presumption based upon the offender's history or the particular facts of the case.  The natural corollary to this finding is that the legislature never mandated a mandatory minimum sentence upon every offender who had not previously served a prison term."  *State v. Paynter*, 5th Dist. No. CT2006-0034, 2006 Ohio 5542, at P38. [**14] Thus, once the judicially mandated findings, as found unconstitutional in *Foster, Apprendi, Blakely,* and *Booker* were excised, the presumptive minimum term, absent the unconstitutional findings could not be given effect.  In other words, the presumption was superfluous when taken out of the context of the judicially-mandated findings which were found to offend the Constitution.

In addition, the Supreme Court proceeded to outline "the 'overwhelming majority' of S.B. 2s reforms that survive [*Foster's*] holding, and noted that trial courts must still 'consider those portions of the sentencing code that are unaffected by its decision ***.'" *Elswick*, 2006 Ohio 7011, at P51, citing *Foster*, at PP101, 105.  These include the requirements that trial courts consider the purposes and

25

> principles of sentencing found in R.C. 2929.12 prior to imposing a
> felony sentence within the authorized statutory range. Id. (citations
> omitted).
>
> Thus, excising the unconstitutional provisions, and those which
> logically could not survive, does not "detract from the overriding
> objectives of the General Assembly, including the goals of protecting
> the public and punishing the offender." Id. at P52, quoting Foster,
> 109 Ohio St.3d 1, 2006 Ohio 856, at P98, 845 N.E.2d 470.
> Accordingly, we find Spicuzza's third and fifth assignments of error
> to be without merit.

Spicuzza, supra at ¶¶26-33.

These allegations of violation of state law fail to rise to the level of a denial of fundamental fairness and, therefore, are not cognizable in federal habeas corpus. However, if they were to be considered this Court would not find that the decision of the state appellate court that severing the offending provisions of the sentencing statute was not a violation of the principle of the separation of powers, and did not violate the legislative intent of the sentencing statute, was either objectively unreasonable or that it involved an unreasonable application of federal law. Consequently, petitioner's third and fifth claims for relief must fail.

In his fourth claim for relief the petitioner argues that the trial court violated the rule of lenity when it imposed more-than-the-minimum prison term upon him instead of a lesser penalty.

As stated previously, to be entitled to relief in federal habeas corpus a petitioner must establish that there has been infringement of a right guaranteed under the United States Constitution, and a violation of state law is not cognizable in federal habeas corpus unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process. This Court is obligated to accept as valid a state court's interpretation of the statutes and rules of practice of that state.

Under the rule of lenity, any ambiguity in a criminal statute is to be resolved in favor of a

26

criminal defendant to which the law applies.  <u>United States v. Santos</u>, ___ U.S. ___, 128 S.Ct. 2020, 2025 (2008).  "This venerable rule not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed. It also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead."  <u>Ibid</u>.  The rule of lenity only comes into play to guide statutory construction if it has been determined that there is ambiguity in a criminal statute.  <u>United States v. Johnson</u>, 529 U.S. 53, 59 (2000).  In other words, the rule has been found to be an aid to resolve ambiguity in a criminal statute, not to create such ambiguity where, as in this case, none exists. <u>Albernaz v. United States</u>, 450 U.S. 333 (1981).

As was also stated previously, the state appellate court, in denying petitioner's assignments of error, referred to its prior decisions in which the same issues had been addressed as supporting its rejection of the claims before it.  In so doing, the state appellate court viewed this issue as a matter of state law.

In <u>State v. Green</u>, <u>supra</u> at ¶24, the court held that "[T]he principle of lenity applies to the construction of ambiguous statutes, not to determination of a statute's constitutionality or to the law regarding the retroactive effect of Supreme Court decisions."  The same claim was also rejected in <u>State v. Elswick</u>, <u>supra</u> at ¶¶40-43, and <u>State v. Spicuzza</u>, <u>supra</u> at ¶¶34-36, after relying on <u>United States v. Johnson</u>, <u>supra</u>, wherein those courts held that "Because R.C. 2929.14(B) is not ambiguous, the rule of lenity does not apply."

Petitioner's claim of violation of the rule of lenity is a matter of state law which fails to rise to the level of a denial of fundamental fairness and, therefore, is not cognizable in federal habeas

corpus.  However, if it was to be considered this Court would find that the decision of the state appellate court on the foregoing matter of state law was neither objectively unreasonable nor did it involve an unreasonable application of federal law, particularly in light of the absence of ambiguity in the sentencing statute.  Consequently, petitioner's fourth claim for relief must fail.

In light of all the foregoing it is concluded that no claim of constitutional violation has been presented requiring further proceedings prior to disposition on the merits.

It is, therefore, recommended that the petition be dismissed without further proceedings.

s/DAVID S. PERELMAN
United States Magistrate Judge

DATE:   June 24, 2009

## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).